UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRITZ ALFRED ERHARDT,

        Petitioner,

    v.

RAYTHEL FISHER, JR.,

        Respondent.

No. 2:16-cv-1002 JAM KJN P

FINDINGS & RECOMMENDATIONS

I. Introduction

    Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2012 conviction. After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

    On March 26, 2012, a jury found petitioner guilty of one count of continuous sexual abuse of a child, and two counts of sexually assaulting a child. (Clerk's Transcript ("CT") 466.) On July 23, 2012, petitioner was sentenced to a total of sixteen years in state prison (two years on counts one and three, and twelve years on count two). (CT 467.)

    Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. The Court of Appeal affirmed the conviction on November 20, 2014. (Respondent's Lodged Document ("LD") 1.)

1    Petitioner filed a petition for review in the California Supreme Court, which was denied

2    on February 11, 2015.  (LD 2, 3.)

3    Petitioner filed the instant petition on May 11, 2016.  (ECF No. 1.)

4    On October 6, 2016, respondent filed a motion to dismiss this action based on petitioner's

5    failure to exhaust his ineffective assistance of counsel claim (ground four).  On March 30, 2017,

6    the district court granted the motion to dismiss, struck petitioner's fourth claim as unexhausted,

7    and directed respondent to answer claims one through three.

8    Respondent filed an answer; petitioner did not file a reply.

9    III.  Facts[1]

10   In its unpublished memorandum and opinion affirming petitioner's judgment of

11   conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

12   following factual summary:

> The victim, defendant's granddaughter, lived with defendant off and on from when she was seven or eight years old until she was 12. She stayed at defendant and his wife's home along with her mother and two brothers. Her family slept in one bedroom, defendant and his wife slept in another. On many nights, the victim slept in the living room on the couch or on the floor because she liked to stay up and watch TV. When she was seven years old, she and defendant would be on the couch together, and defendant would tickle her back. Then he would reach around and grope her breasts. Defendant would also have her put her hand down his pants and fondle his testicles. The victim believed defendant had touched her breasts at least 10 or more times. She remembered it happened "pretty often and a lot."
>
> When the victim was around nine years old, defendant began having her masturbate him. It happened at night while she was sleeping in the living room and the rest of the family was upstairs. She would be asleep, but then would wake up to defendant using her hand to masturbate himself. The victim would hear defendant gasping or moaning, and he would ejaculate into her hand.[FN1] During these times, the victim would pretend to be asleep and would wait until defendant was done. The victim stated this occurred around four times a week, and possibly on the weekend if she was at the home, with some breaks when she and her family were moving around and not living there. The victim remembered defendant telling her, "'If you tell anyone, then I will go to jail,'" or "'I'll get in trouble.'"

<hr>

[1]  The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Erhardt, No. C071688 (November 21, 2014), a copy of which was lodged by respondent as LD 1.

2

[FN1 The victim did not know the word "ejaculation" until it was explained to her in an interview with a sheriff's deputy. When the incidents happened, she just knew that something wet came out of defendant's penis and onto her hand.]

The last incident occurred when the victim was 12 years old. While sleeping on the living room floor, she awoke to defendant tugging on her hair with his knees in her back. Defendant was using her hair to masturbate. She pretended to be asleep. She heard defendant moan and gasp, then saw him pull up his pants when he was done. She laid there until he went upstairs, and then went into the bathroom.

On July 10, 2009, while she was 12, the victim and her older brother were playing outside. Defendant came outside and told them what they were doing was wrong. As defendant was walking away, the victim snapped back and said, "What you do at night is wrong." The victim did not know if defendant heard her. The victim started crying and told her brother she was being molested. She asked him to tell their mother.

The victim's brother corroborated this incident. He remembered that on July 10, 2009, defendant walked away after telling them what they were doing was wrong. Then the victim turned around and said, "What you do at night is wrong." The brother said defendant had gone inside before the victim made that remark. The brother told his mother, G., what his sister had told him. Afterward, the family packed up and left defendant's house.

T. is the victim's father. He and G. were divorced in 2005. They attempted to reconcile in 2006 and they lived together then, but since then they have not lived together. At the time of trial, the victim, her brother, and a son born to G. after the divorce who was not T.'s biological child lived with T.

On July 10, 2009, G. visited with T. and told him what the victim had told her. The children were at someone else's house. After G. left, T. picked up the victim. She told him what had happened. T. then took her to the police department. The police directed him to the county sheriff. He went home, and a sheriff's deputy arrived there. T. and the victim spoke with the deputy.

On July 16, T. and the victim spoke with someone at the district attorney's office. A few days later, he met with a detective and placed a call to defendant to see if he would confess. In the call, defendant neither admitted nor denied the molestations.

*Defense*

Regina Sharp was defendant's neighbor and friend. She had worked with him at Becker's Gun Shop for about three years where they would dress up and reenact different scenarios of the 1850's for children. She knew defendant to be an honest man. She had also been a neighbor to G., T., and their children at times.

3

On July 10, 2009, G. and the victim visited Sharp at her home. G. and the victim were acting giddy, not normal, and not right. They told Sharp what had happened to the victim. G. stayed at the house for about two hours. The victim stayed for about four or five hours. Sharp's husband contacted T.

G., recently remarried, testified that after the victim made the allegations, she continued to live in defendant's home except for an eight-day period around the time defendant was arrested in August, when she and the children lived in hotels. For the first week after the victim's report, the victim lived with T.  G. continued to live in defendant's home with her children because she had nowhere else to go. During that time, she did not isolate the victim from any part of the home, but she kept a closer eye on her. The victim continued her routines of playing in the yard and next door at defendant's mother's home, and having friends over to swim or spend the night.

G. had lived with defendant and her mother off and on for about three years prior to the victim's report. Defendant wanted G. to leave and get her own home for her and the children. G. and defendant had two or three major discussions about this, one of them heated. The victim was present during the heated discussion.

G. stopped living at defendant's home when she came back from rehab in 2010. At the time of trial, she was on probation for child endangerment. She also has a prior conviction from 1998 for grand theft.

Margaret Erhardt, defendant's wife, testified. She said G. and the children moved in and out of her and defendant's home many times during the four years leading up to 2009. The children were allowed to sleep in the living room, but not on the couch. They could sleep on the floor in sleeping bags. But by 2009, the children were allowed to sleep on the couch if they asked. Bedtime was 9:00 p.m., and Margaret was aware of when and where they went to bed. She could hear their bedroom door close. The door to the bedroom where G. and the children slept and the door to the bedroom where defendant and Margaret slept were closed every night. By the summer of 2009, the victim preferred to sleep outdoors. If it became too cold, she would pull herself in and sleep on the couch.

An air vent ran from the living room to Margaret's bedroom. Through that vent, she could hear what was happening in the living room while in her bedroom. She could hear people talk and the television, and she could see light reflecting from there. If someone went downstairs at night, she would hear the light click on.

Usually, Margaret went up to bed first before defendant. She would watch TV for 30 minutes to an hour and often fall asleep. Then defendant would come into the room, and she would hear him enter. She was a light sleeper. She was never aware of the victim or defendant getting up in the middle of the night and watching TV downstairs. Defendant was a heavy sleeper and he snored, and she was not aware of him ever leaving the bedroom in the middle of the night except to wake and go to work early.

4

Margaret had a great relationship with the victim. They talked a lot and had an open relationship. They had "alone time" together shopping and doing other things together. Sometimes, when defendant had a late meeting, the victim would sleep with Margaret in her bed. At no time did the victim tell Margaret she was having a problem with defendant or express reluctance about being around him. Margaret has always known defendant to be an honest man. She also has known the victim to lie.

At the time of trial, Darryl Kreuzberg had known defendant for 20 years. They had worked together in business and socialized together with their wives. In Kreuzberg's opinion, defendant is the most trustworthy person he has ever known, and absolutely believes him to be an honest person.

Kreuzberg first heard about the allegations against defendant during the weekend of July 4th, 2009. Both defense counsel and the prosecutor asked Kreuzberg if he was certain he heard of the allegations on the July 4th weekend. Kreuzberg said he was absolutely certain. He runs a raft tow service on the American River. He was on a jet ski towing rafts when the victim's father, T., waved at him from the beach. He pulled over, and T. said, "Hey, guess what?" Kreuzberg said, "What's that?" T. said, "Well, [defendant] is going to get arrested for child molestation." On cross-examination, Kreuzberg said T. told him "with a big smile, that [defendant] is going to jail for molestation." Kreuzberg asked who was molested, and T. said it was the victim, who was floating in a small raft next to where they were talking. Kreuzberg avoided T. after that.

Defendant testified in his own behalf. He denied touching the victim's breasts and using her hand and her hair to masturbate. He also denied ever saying to the victim something like, "Don't tell anyone or I'll go to jail."

Defendant learned of the accusations on July 11, 2009, from his wife. He also spoke with his son, who told him of the accusations and recommended he seek an attorney. Defendant met with attorneys the next week. They told him to expect a telephone call from T., and they instructed him not to talk about the allegations with anyone or to answer any questions. Defendant received the phone call from T. on July 19.

(People v. Erhardt, slip op. at 2-6.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

////

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98. If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny

relief." Richter, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006).

V. Petitioner's Claims

A. Preclusion of Lay Opinion Character Evidence

Petitioner claims that the trial court prejudicially erred by prohibiting the defense from introducing lay opinion evidence that petitioner's character was inconsistent with being a child molester, thus depriving him of the right to present a defense. Respondent counters that on appeal and in the petition for review, petitioner relied solely on state law, and therefore his current habeas claim that the exclusion of the proposed character evidence violated petitioner's right to present any defense at all, in violation of the Fourteenth Amendment, is not exhausted. (ECF No. 23 at 16.) Nevertheless, respondent contends that the claim can be rejected because the claim lacks merit.

1. State Court Opinion

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

*Lay Opinion Character Evidence*

Defendant sought to introduce under Evidence Code section 1102[FN2] the opinion testimony of four of his acquaintances who had observed him with children. He sought their opinions that, based on their observations, defendant was not a sexual deviant or prone to

9

molesting children. The trial court denied admitting the evidence, ruling the proposed opinion testimony could be given only by experts, was not relevant, and was unduly prejudicial under section 352. Defendant contends the trial court erred when it refused to admit the evidence. We conclude the court erred but we also conclude the error was not prejudicial.

[FN2 Undesignated references to sections are to the Evidence Code.]

Section 1102 provides an exception to the general rule prohibiting the use of character evidence to prove a defendant's conduct on a specific occasion. (See § 1101, subd. (a).) Under section 1102, "evidence of the defendant's character or a trait of his character in the form of an opinion or evidence of his reputation" is not made inadmissible by section 1101 in a criminal action if the evidence is "[o]ffered by the defendant to prove his conduct in conformity with such character or trait of character." (§ 1102, subd. (a).)

"This exception allows a criminal defendant to introduce evidence, either by opinion or reputation, of his character or a trait of his character that is 'relevant to the charge made against him.' [Citation.] . . . In appropriate cases, such circumstantial evidence 'may be enough to raise a reasonable doubt in the mind of the trier of fact concerning the defendant's guilt.' ([Citation]; see also *Michelson v. United States* (1948) 335 U.S. 469, 476 [93 L.Ed. 168, 174].)" (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1305 (*McAlpin*).)

Contrary to the view expressed by the trial court, opinion evidence of a defendant's character as not being a sexual deviant may be introduced by lay testimony. (*McAlpin*, *supra*, 53 Cal.3d at p. 1305.) To be admissible, the lay opinion testimony must satisfy at least four conditions. First, the evidence must be relevant. "Such evidence is relevant if it is inconsistent with the offense charged -- e.g., honesty, when the charge is theft -- and hence may support an inference that the defendant is unlikely to have committed the offense." (*Ibid.*)

Second, the character evidence may be introduced by lay testimony only to the extent the opinion is based on the witness's own perception. (*McAlpin, supra*, 53 Cal.3d at pp. 1306-1307.) If the lay witness offers an opinion that goes beyond the facts he observed, the opinion is inadmissible. (Id. at p. 1308.)

Third, the defendant's character trait sought to be established may not be proven by evidence of specific acts of "'nonmolestation,'" but instead may be shown based on the witness's long-term observation of defendant's course of consistently normal behavior. (*McAlpin, supra*, 53 Cal.3d at pp. 1309-1310.)

10

And fourth, of course, the evidence must not be unduly prejudicial. The trial court may exclude the lay opinion testimony if it is unduly prejudicial under section 352. (*McAlpin, supra*, 53 Cal.3d at p. 1310, fn. 15.)

The *McAlpin* court applied these rules to the facts before it. In that case, the defendant was charged with committing lewd conduct upon a child under the age of 14. (*McAlpin, supra*, 53 Cal.3d at p. 1294.) Defendant sought to introduce the opinions of three lay witnesses pursuant to section 1102 as to whether he was a sexual deviant, or, as he defined it, a "'person of lustful or lewd conduct with children.'" One witness was a close male friend of defendant's from his college days who had often double-dated with him. The other two witnesses were women who had dated defendant for approximately six months, had been sexually intimate with him, and who each had a daughter. All three proposed to testify that in their opinion, defendant was not a sexual deviant. The male witness based his opinion on defendant's assertedly normal sexual contact with adult women. The two women witnesses based their opinions on two observations: their assertedly normal personal sexual experiences with defendant, and their observations of defendant's conduct with their daughters during their relationships. The trial court excluded all of the evidence. (*McAlpin, supra*, 53 Cal.3d at pp. 1304-1305, 1308.)

The Supreme Court agreed with the trial court's decision in part. It affirmed the court's denial of the male witness's testimony because his testimony was not based on any personal observation of defendant's conduct with children. It also affirmed the court's denial of the female witnesses' testimony to the extent they based their opinion on their private sexual experiences with defendant. (*McAlpin, supra*, 53 Cal.3d at pp. 1308-1309.) None of this testimony was based on personal observations that were relevant to disproving the defendant did not engage in lewd conduct with children.

However, the Supreme Court ruled the trial court should have admitted the female witnesses' opinion testimony to the extent it was based on their personal observations of defendant's conduct with their daughters. "The opinion of the women character witnesses . . . was also based on their observation of defendant's conduct with their daughters. According to the offer of proof, the women proposed to testify that in the course of their relationship with defendant they observed his conduct with their daughters and saw no unusual behavior either by defendant or by their daughters, and that it is their opinion, based on those personal perceptions, that defendant is not a person given to lewd conduct with children. Because the latter conclusion of the witnesses was based on their direct observation of defendant's behavior with their daughters, it was both a proper

subject of lay opinion testimony and relevant to the charge of child molestation." (*McAlpin, supra*, 53 Cal.3d at p. 1309.)

In addition, the female witnesses' testimony was based on observations made throughout the course of their relationships with defendant, not just specific instances of conduct. "A fair reading of the offer of proof shows that the women witnesses would not have limited their testimony to specific instances in which defendant had the opportunity to, but did not, molest their daughters. Instead, the witnesses proposed to testify that they observed defendant's behavior with their children throughout the course of their relationship with him, and their opinion that he is not a person given to lewd conduct with children arose from that experience as a whole. Thus viewed, the proffered testimony was intended to prove the relevant character trait not by specific acts of 'nonmolestation,' but by the witnesses' opinion of that trait based on their long-term observation of defendant's course of consistently normal behavior with their children. The trial court should have allowed such testimony." (*McAlpin, supra*, 53 Cal.3d at pp. 1309-1310, fns. omitted.)

We apply these rules here. Defendant sought at various times to introduce the opinion testimony of four lay witnesses. Susan Wayland was a retired teacher who had known defendant for about five years and had observed him with school groups and visitor groups at Marshall Gold Discovery State Historic Park and Sutter's Fort State Historic Park. She had never seen defendant engage in any inappropriate behavior, and on that basis would have testified he lacked the character trait of a sexual deviant.

Ken Simmons, a retired superintendent in charge of Marshall Gold Discovery State Historic Park, had worked alongside defendant teaching hundreds of interpretive classes to park visitors and school groups. During those times, he never saw defendant engage in any inappropriate behavior.

Sandi Morgan, one of the victim's former school teachers, had worked around defendant while he worked with children, and she had never seen him engage in any inappropriate behavior. Based on her observations, she would have testified defendant was not inclined towards sexual molestation.

Jerry Morman had known defendant and his family for 15 years. He was a business owner at the Coloma gold discovery site, and he had seen defendant take children on tours. He never saw anything inappropriate take place between defendant and children.

This evidence should have been admitted. It was relevant, was based on the witnesses' long-term observations and on specific acts of

nonmolestation, and was not unduly prejudicial. The evidence was relevant because it supports an inference that defendant was unlikely to commit the charged offenses by showing he did not treat children inappropriately. It could be used to establish a lay person's opinion of defendant's character traits towards children that contradicted those implied by the criminal charge against defendant.

The Attorney General asserts the evidence was not relevant because the witnesses "did not observe [defendant] interacting one on one with a child, in his personal residence, under the cover of darkness while others slept." Under this standard of relevance, no evidence of a character trait towards child molestation would likely ever be admitted, as the only possible observers of defendant's actions would have been the victim.

Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.) "Evidence is relevant when no matter how weak it is it tends to prove a disputed issue. [Citation.]" (*In re Romeo C.* (1995) 33 Cal.App.4th 1838, 1843.) The proposed opinion evidence, admittedly weak, nonetheless is relevant to proving defendant's character as a child molester, and should have been admitted. The evidence was based on the witnesses' long-term observations of defendant interacting with children from which they could develop an opinion of whether he had a trait of engaging with children inappropriately. That they did not see defendant engage with children individually in a private home went to the evidence's weight.

The Attorney General also contends the trial court correctly excluded the evidence as unduly prejudicial under section 352. Under that statute, the trial court in its discretion may exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The Attorney General contends the evidence had no probative value and would have only misled the jury.

We review the trial court's decision under section 352 for an abuse of discretion (*McAlpin, supra*, 53 Cal.3d at p. 1310, fn. 15), and we agree with defendant that discretion was abused in this instance. The evidence's probative value was light, but nothing in the record indicated admitting the evidence would unduly consume time, inflame the juror's passions, confuse the issues, or mislead the jury. The defendant's character trait of not being a sexual deviant is a relevant issue in a child molestation case, and admitting evidence on

13

that point would not confuse that issue with the other issues before the jury. Addressing a relevant issue is not misleading the jury.

We thus must determine whether the decision not to admit the lay opinion testimony was prejudicial error. Defendant asserts if the trial court had admitted the proposed testimony, there was "at least a reasonable chance" he would have obtained a more favorable outcome. This is not the correct standard for determining prejudicial error. We review this particular error under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*McAlpin, supra*, 53 Cal.3d at pp. 1311-1313.) Under that standard, we review the entire cause to determine if it is "reasonably probable" defendant would have received a more favorable judgment had the evidence been admitted. (*People v. Watson, supra*, 46 Cal.2d at p. 836.)

We find no prejudicial error. The witnesses' testimony carried very little weight. Even if it had been admitted, it is not probable defendant would have obtained a more favorable judgment. Character evidence of defendant's honesty and trustworthiness was admitted, and the lay testimony would have added little to that. The lay witnesses observed defendant in public settings with groups of children. None of them observed defendant interacting with an individual child in a private or home setting over an extended period of time. Their testimony thus added little to the character evidence that was admitted of defendant being an honest and trustworthy person, or to outweigh the incriminating evidence. The victim's testimony was detailed and not contradicted. It was also supported inferentially by Margaret's testimony that defendant did not come up to bed for an hour or so after she went to bed and fell asleep. She may have heard defendant come into the room or people in the home get up at night, but the only witness who described defendant's behavior after she had gone up to bed was the victim. Because the proposed testimony would have added so little, we cannot say it was reasonably probable defendant would have received a more favorable judgment had the evidence been admitted.

(People v. Erhardt, slip op. at 7-13.)

2. Legal Standards

State and federal authorities have broad latitude to establish rules excluding evidence from criminal trials, but the Due Process Clause of the Fourteenth Amendment and the Compulsory Process and Confrontation clauses of the Sixth Amendment guarantee a criminal defendant a meaningful opportunity to present a complete defense. Crane v. Kentucky, 476 U.S. 683, 690, (1986). It is a fundamental element of due process of law that a defendant has a right to present a

14

defense by compelling the attendance and presenting the testimony of witnesses. <u>Washington v.</u> <u>Texas</u>, 388 U.S. 14, 18-19, 23 (1967). However, a defendant does not have an absolute right to present evidence without reference to its significance or source; rather, the right to present a complete defense is implicated when the evidence the defendant seeks to admit is relevant, material, and vital to the defense. <u>Id.</u> at 16. Further, the exclusion of the evidence must be arbitrary or disproportionate to the purposes the exclusionary rule is designed to serve. <u>Holmes v.</u> <u>South Carolina</u>, 547 U.S. 319, 324-25 (2006). If the mechanical application of a rule that is respected, frequently applied, and otherwise constitutional would defeat the ends of justice, then the rule must yield to those ends. <u>Chambers v. Mississippi</u>, 410 U.S. 284, 302 (1973).

However, well established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. <u>Holmes v. South Carolina</u>, 547 U.S. at 326. Thus, it is constitutionally permissible to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues. <u>Id.</u> at 326-27.

Where exclusion of evidence violates a petitioner's right to present a defense, habeas relief is the appropriate remedy only if the constitutional violation resulted in error that was not harmless, that is, error that resulted in actual prejudice, or had a substantial and injurious effect or influence in determining the jury's verdict. <u>Fry v. Pliler</u>, 551 U.S. 112, 121-22 (2007); <u>Brecht v.</u> <u>Abrahamson</u>, 507 U.S. 619, 637 (1993)). To consider whether the <u>Brecht</u> standard has been met, a court considers various factors, including but not limited to 1) the importance of the witness's testimony in the prosecution's case, 2) whether the testimony was cumulative, 3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, 4) the extent of cross-examination otherwise permitted; and 5) the overall strength of the prosecution's case. <u>Merolillo v. Yates</u>, 663 F.3d 444, 455 (9th Cir. 2011) (citing <u>Delaware v. Van</u> <u>Arsdall</u>, 475 U.S. 673, 684 (1986)).

3. <u>Failure to Exhaust</u>

As argued by respondent, petitioner failed to raise in the California Supreme Court petitioner's federal due process challenge to the preclusion of the lay opinion character evidence.

15

Rather, petitioner's character evidence claim was argued solely on the basis of state law. Errors of state law do not warrant the granting of federal habeas relief. Estelle, 502 U.S. at 67. "The issue for us, always, is whether the state proceedings satisfied due process; the presence or absence of a state law violation is largely beside the point." Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). Because petitioner failed to raise his federal due process claim asserting the alleged wrongful exclusion of petitioner's character evidence in the California Supreme Court, petitioner failed to fairly present such claim to the state's highest court, rendering it unexhausted for purposes of federal habeas review. Duncan v. Henry, 513 U.S. 364, 366 (1995) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court."); see also Baldwin v. Reese, 541 U.S. 27, 32 (2004) (holding that for a petitioner to "fairly present" federal claims to a state court, the federal issues must be clearly identified in the state court brief).

### 4. Due Process Challenge

Notwithstanding petitioner's failure to exhaust his federal due process claim, the court recommends that the due process claim be denied on the merits, as discussed below. 28 U.S.C. § 2254(b)(2) (A petition may be denied on the merits without exhaustion of state court remedies.).

Petitioner argues that the exclusion of this character evidence was prejudicial because there was no physical evidence, and "[t]he case hinged solely on the credibility and character of the parties." (ECF No. 1 at 18.) Thus, the trial court excluded critical defense evidence because his only defense was his good character and reputation because no other type of evidence was proffered. Petitioner contends that a fair trial allows a criminal defendant to present all relevant evidence. Further, petitioner argues that his defense "appears weak because most of the defense available to [him] was excluded." (ECF No. 1 at 19.) He contends that the record fails to show the powerful testimony of these witnesses and the cumulative effect their testimony, "with so much observational experience of [petitioner] in relevant situations with children" would have on the jury. (Id.) Petitioner contends such exclusion "resulted in a near total loss" of his ability to defend against these charges.

Respondent counters that petitioner "cannot demonstrate that the exclusion of the opinion testimony amounted to a constitutional violation." (ECF No. 23 at 20.) Respondent argues that other character evidence as to petitioner's honesty and trustworthiness was admitted at trial, so the proffered evidence was merely cumulative on the issue of credibility. The four excluded character witnesses were not offering the sole evidence of petitioner's character. Rather, petitioner's wife, co-worker Regina, and former co-worker Kreuzberg testified that petitioner was an honest man. (ECF No. 23 at 21.) Regina also testified that the victim was not acting normal at the time the allegations were revealed, and petitioner's wife testified that the victim was known to lie. (Id.) Respondent argues that these witnesses offered more powerful testimony because their close relationship with petitioner spanned many years, and included observations of petitioner's behavior with the victim. The excluded character evidence, on the other hand, involved sporadic observations of petitioner's behavior with groups of school children at nearby state parks. Finally, respondent argues that petitioner cannot demonstrate that any constitutional error caused prejudice for the following reasons: the proffered evidence was cumulative and carried little weight; the victim's testimony was "detailed and not contradicted;" the victim's testimony was inferentially supported by petitioner's wife's testimony that petitioner did not join her in bed until an hour or so after she went to bed and fell asleep (ECF No. 23 at 22); the victim's testimony was supported by her brother's testimony that he was present when the victim yelled at petitioner: "What you do at night is wrong," and then, while on the verge of tears and looking scared, the victim told her brother about the molestations. (RT 274.)

"The Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense' and the right to present relevant evidence in support thereof. Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013)[3] (quoting Crane, 476 U.S. at 690). See also Holmes v. South Carolina, 547 U.S. at 324. Nonetheless, the United States Supreme Court has not "squarely addressed" whether a state court's exercise of discretion to exclude testimony at trial violates a criminal defendant's right to present relevant evidence, or clearly established a "controlling legal

---

[3] In Nevada, the Court denied the prisoner's challenge to the exclusion of evidence that the victim had made false accusations in the past. Id.

standard" for evaluating discretionary decisions to exclude the type of evidence at issue here. Moses v. Payne, 555 F.3d 742, 758-59 (9th Cir. 2009); see also Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011) ("Between the issuance of Moses and the present, the Supreme Court has not decided any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete defense or 'establish[ing] a controlling legal standard' for evaluating such exclusions."), cert. denied, 132 S. Ct. 593 (2011)). However, the Supreme Court has rejected the argument that due process necessarily requires the exclusion of prejudicial or unreliable evidence. See Perry v. New Hampshire, 132 S. Ct. 716, 728 (2012); Spencer v. Texas, 385 U.S. 554, 563-64 (1967).

Accordingly, the decision of the California Supreme Court rejecting petitioner's challenge to the trial court's decision to exclude from introduction at trial the character evidence described above was not contrary to nor an unreasonable application of clearly established federal law and may not be set aside. Id. See also Knowles v. Mirzayance, 556 U.S. 111, 112 (2009) ("it is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the United States Supreme Court]"); Wright v. Van Patten, 552 U.S. 120, 126 (2008) (relief is "unauthorized" under Section 2254(d)(1) when the Supreme Court's decisions "give no clear answer to the question presented, let alone one in [the petitioner's] favor," because the state court cannot be said to have unreasonably applied clearly established federal law); Hedlund v. Ryan, 750 F.3d 793, 799 (9th Cir. 2014).

Indeed, petitioner was not deprived of a defense; he was allowed to admit character evidence that petitioner is honest and trustworthy. Regina, petitioner's co-worker and friend, also neighbor to petitioner's daughter, testified she knew petitioner to be an honest man who had never lied to her. (RT 357, 366, 369-70.) Regina testified that she saw the victim about three or four times a month, but on July 10, 2009, the victim was acting "odd," "not normal," "laughing," and "kind of giddy," and the victim and her mother were acting like little kids," while telling Regina what had happened to the victim. (RT 361-63.) Petitioner's wife Margaret testified as to the sleeping arrangements in her home at the time. (RT 381-95.) Margaret testified that because

18

1    she was a light sleeper, and there was a cold vent between her bedroom and the living room, she

2    would have awakened if anyone was talking or stirring in the living room.  (RT 381, 383, 384.)

3    She also testified that she knew petitioner to be a very honest man.  (RT 390.)  Margaret would go

4    up to bed first and fall asleep, but would awaken when petitioner came to bed.  (RT 396.)

5    Margaret further testified that she has known the victim to lie.  (RT 399.)  John Kruezberg

6    testified that he's known petitioner for twenty years, and that petitioner is the most trustworthy

7    person Kruezberg had ever known, and knows petitioner to be an honest man.  (RT 409.)

8        But even assuming, *arguendo*, that the trial court's exclusion of evidence amounts to a

9    Constitutional violation, petitioner fails to demonstrate that such error had a substantial and

10   injurious effect on the verdict.  Brecht, 507 U.S. at 637.  Here, the exclusion of the lay opinion

11   character evidence did not result in actual prejudice.  As explained by the state appellate court,

12   the proposed testimony of these four proposed character witnesses had limited probative value

13   because they only sporadically observed petitioner interacting with groups of children in public.

14   (CT 146-47 (Susan Wayland, Ken Simmons), 235-44, 240-41 (Sandi Morgan), 243 (Jerry

15   Morman), 247.)  None of these witnesses saw petitioner interact with a child in a private home or

16   other private setting over a significant period of time.  Because the excluded character evidence

17   was of limited probative value, it was not a major part of petitioner's defense.

18       Importantly, the excluded character evidence would not outweigh the direct evidence

19   provided by the victim's detailed testimony, which was further supported, at least by inference,

20   through petitioner's wife's testimony that she went up to bed first and fell asleep, and petitioner

21   would not come up until an hour or so later.  (RT 396.)  Similarly, the victim's testimony was

22   supported by her brother's testimony that he heard the victim yell at petitioner, "What you do at

23   night is wrong."  (RT 274.)  The victim's brother testified that the victim told him what she meant

24   by that, and while doing so, was "sort of scared and about to cry."  (RT 274.)  Also, despite

25   testifying that the victim was not acting normal on July 10, 2009, Regina testified that the victim

26   was a good kid.  (RT 358.)

27       Furthermore, the trial court instructed the jury on petitioner's presumption of innocence,

28   the prosecution's burden of proof beyond a reasonable doubt, judging the credibility of witnesses,

evaluating the evidence and the character evidence of defendant adduced at trial.  (CT 285, 287, 295, 296-300, 309.)  In light of the victim's strong testimony and supporting evidence indicating petitioner's guilt, the limited probative value of the excluded character evidence, and the instructions given to the jury, it is not reasonably probable that the omission of the proffered character evidence had a "substantial and injurious effect or influence in the determining the jury's verdict."  Brecht, 507 U.S. at 637.

### iii.  Conclusion

The state appellate court's decision that the exclusion of such character evidence was not prejudicial error is not contrary to or an unreasonable application of United States Supreme Court authority and is not "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 131 S. Ct. at 786-87.  Accordingly, petitioner is not entitled to relief on his first claim.

### B.  Refusal to Authorize Second Psychological Evaluation

Petitioner claims that the trial court violated petitioner's Sixth and Fourteenth Amendment rights to a fair trial, effective assistance of counsel, and due process of law by refusing to authorize a second psychological evaluation after the first evaluation yielded no opinion on whether or not petitioner was likely to have committed the crimes.  The petition cites no Supreme Court authority, but refers to petitioner's appellate and reply briefs filed in the state appellate court (LD 4 at 38-44; 6 at 11-13).  In those state court briefs, petitioner relied primarily on state law, but argued that because an expert opinion that petitioner's psychology made him unlikely to commit the alleged crimes would have been crucial to his defense, the United States Constitution required more than a single failed attempt to obtain an expert opinion either supporting or opposing that hypothesis, citing Ake v. Oklahoma, 470 U.S. 68, 83 (1985).  (LD 4 at 40.)

Respondent counters that to the extent petitioner alleges the trial court abused its discretion under state law, such claim fails to state a federal question.  But respondent argues that petitioner is also not entitled to habeas relief because there is no constitutional right to the appointment of a second psychiatric expert to evaluate a defendant to determine whether or not a defendant is a pedophile because Ake has not been extended beyond the appointment of a

psychiatric expert to evaluate an indigent defendant's sanity, and thus the state court's rejection of this claim is not contrary to, or an unreasonable application of clearly established United States Supreme Court precedent. (ECF No. 23 at 24.) Nevertheless, respondent contends that petitioner failed to establish a basis for a second expert, and therefore the state court reasonably denied the request. Finally, respondent argues that petitioner failed to show what evidence the second psychiatrist could provide, and therefore did not demonstrate that the trial court's refusal to appoint a second psychiatric expert had a substantial and injurious impact on the jury's verdict. (ECF No. 23 at 25.)

1. State Court Opinion

The last reasoned rejection of petitioner's claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

*Request for Second Psychiatric Evaluation*

Defendant contends the trial court abused its discretion when it denied his request to have a second psychiatric evaluation for trial. We disagree.

The trial court authorized defendant to hire Dr. Eugene Roeder to conduct a psychiatric evaluation to determine defendant was not a pedophile. However, defense counsel informed the court that after conducting the examination, Dr. Roeder was unable to form an opinion as to whether defendant was a pedophile. Defense counsel stated "the doctor's report -- or the letter I got from him indicated that there was a problem on veracity. . . . But what results he did see seemed to indicate that [defendant] was not a pedophile." Counsel informed the court that defendant "evidently came across that he saw life through rose-colored lenses, and so the psychologist could not say whether the results were valid."

Counsel sought authority to hire a Dr. Schafer to conduct a second psychiatric evaluation of defendant. Counsel stated the second evaluation was necessary because Dr. Roeder "was unable to come to any conclusions due to some problems with the validity scores." Counsel requested $1,500 for the evaluation and its report.

The trial court denied this second application. It also denied defendant's request for a new trial which was based in part on the court's denial of the second application.

We conclude the trial court did not abuse its discretion by denying the second application. "Refusal to appoint a second expert to examine any particular issue will ordinarily not constitute abuse of

discretion. [Citations.]" (*In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084.) In this case, the court did not abuse its discretion because defendant had not been honest with the first expert. Counsel stated there had been a problem with veracity. If defendant was not going to be honest in a psychiatric evaluation, there was no foundation established to support approving a second evaluation. (*See, e.g.,* *Collins v. Superior Court* (1977) 74 Cal.App.3d 47, 52 [no abuse of discretion where court reasonably finds an expert is not necessary].) The court was under no obligation to give defendant another chance at finding an expert when he was unwilling to participate honestly and fully in the examination.

(People v. Erhardt, slip op. at 13-14.)

2. Governing Standards

Generally, as discussed above, the admissibility of evidence is a matter of state law and is not reviewable in a federal habeas corpus proceeding. Estelle, 502 U.S. 62, 68 (1991); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), cert. denied, 478 U.S. 1021 (1985). Accordingly, incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected. See Whelchel v. Washington, 232 F.3d 1197, 1211 (9th Cir. 2000) (citations omitted).

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a defense and to present relevant evidence in their own defense. Crane, 476 U.S. at 690 (quoting California v. Trombetta, 467 U.S. 479, 485 (1984); Chambers, 410 U.S. at 294. This right is not unlimited, but rather, is subject to reasonable restrictions. United States v. Scheffer, 523 U.S. 303, 308 (1998).

3. Analysis

As argued by respondent, a claim that the trial court abused its discretion under state law fails to state a federal question. Estelle, 502 U.S. 62, 68 (1991).

Further, petitioner's reliance on Ake is unavailing. In Ake, the United States Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense." Ake, 470 U.S. at 83. Thus, Ake, which

22

1    involved a defendant who made a threshold showing of an impaired mental state, is

2    distinguishable because petitioner did not allege an impaired mental state as a possible defense.

3    Nevertheless, petitioner's claim that he was entitled to a second psychological expert

4    under Ake is also unavailing. In 2011, the Ninth Circuit explained that defense counsel was not

5    ineffective for failing to seek another court-appointed doctor:

> By its own terms, Ake "limit[ed] the right [it] recognize[d]" to "provision of *one* competent psychiatrist." Ake, 470 U.S. at 79, 105 S.Ct. 1087 (emphasis added). Given this unambiguous language, we've held that the defendant "lacks the right to appointment of a *second* psychiatrist," Pawlyk v. Wood, 248 F.3d 815, 824 (9th Cir. 2001), even where the first psychiatrist is alleged to be incompetent or reaches a diagnosis unfavorable to the defense, see Harris v. Vasquez, 949 F.2d 1497, 1516-17 (9th Cir. 1990). We've recognized that Ake's "limitation to a single, independent psychiatrist is critical given that '[p]sychiatry is not . . . an exact science, and psychiatrists disagree widely and frequently . . . on the appropriate diagnosis.' " Pawlyk, 248 F.3d at 823 (quoting Ake, 470 U.S. at 80, 105 S. Ct. 1087) (alteration and first omission in original). Accordingly, neither we, nor the Supreme Court, has ever held that a trial court violated Ake by refusing to appoint a second, let alone third, mental health expert. E.g., Harris, 949 F.2d at 1516 (Ake did not require appointment of a third psychiatrist); see also, e.g., Granviel v. Lynaugh, 881 F.2d 185, 191 (5th Cir. 1989) (Ake did not require appointment of an additional psychiatrist); Martin v. Wainwright, 770 F.2d 918, 934 (11th Cir. 1985) (Ake did not require appointment of a second neurologist).

17   Leavitt v. Arave, 646 F.3d 605, 610 (9th Cir. 2011). Because the Supreme Court has expressly

18   limited an indigent defendant to the "provision of one competent psychiatrist," Ake, 470 U.S. at

19   79, the trial court's denial of petitioner's request for a second psychological expert was not

20   contrary to, or an unreasonable application of, clearly established federal law as determined by

21   the Supreme Court. As a result, petitioner is not entitled to habeas relief on his second claim.

22   C.  Cumulative Error

23   In his third claim, petitioner contends that the cumulative effect of the errors alleged

24   herein constitute a denial of due process under the Fourteenth Amendment. Respondent argues

25   that this claim fails because the Supreme Court has not squarely addressed this issue or

26   established a general legal principle that clearly extends to a new context, and therefore the court

27   cannot find that the state court's rejection of this claim was contrary to, or an unreasonable

28   application of, clearly established Supreme Court precedent. (ECF No. 23 at 25-26.)

1    Nevertheless, respondent contends that because only a single evidentiary error under state law

2    occurred, there is nothing to accumulate, and that because plaintiff was able to present a

3    comprehensive defense, no constitutional right to due process was violated as a result.  (ECF No.

4    23 at 26.)

5         The last reasoned rejection of petitioner's claim is the decision of the California Court of

6    Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed

7    this claim as follows:

8         Defendant contends the failure to admit the lay opinion testimony
          and the decision not to authorize a second expert constitute
9         cumulative error. We disagree. The omission of the lay opinion
          testimony was not prejudicial error, and the decision not to authorize
10        a second expert was not error at all. There was no cumulative error,
          and, as a result, defendant was not denied a fair trial. (See, e.g.,
11        *People v. Martinez* (2010) 47 Cal. 4th 911, 968.)

12   (People v. Erhardt, slip op. at 14.)

13        The Ninth Circuit has concluded that under clearly established United States Supreme

14   Court precedent the combined effect of multiple trial errors may give rise to a due process

15   violation if it renders a trial fundamentally unfair, even where each error considered individually

16   would not require reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th. Cir. 2007) (citing Donnelly

17   v. DeChristoforo, 416 U.S. 637, 643 (1974), and Chambers, 410 U.S. at 290.  "The fundamental

18   question in determining whether the combined effect of trial errors violated a defendant's due

19   process rights is whether the errors rendered the criminal defense 'far less persuasive,' Chambers,

20   410 U.S. at 294, and thereby had a 'substantial and injurious effect or influence' on the jury's

21   verdict."  Parle, 505 F.3d at 927 (quoting Brecht, 507 U.S. at 637).  See also Hein v. Sullivan, 601

22   F.3d 897, 916 (9th Cir. 2010) (same).

23        This court has addressed each of petitioner's claims and has concluded that no error of

24   constitutional magnitude occurred.  This court also concurs with the state court's finding that the

25   omission of petitioner's character evidence was not prejudicial, and concludes that such

26   nonprejudicial error did not render petitioner's defense "far less persuasive," or have a

27   "substantial and injurious effect or influence on the jury's verdict."  Parle, 505 F.3d at 927.

28   Accordingly, petitioner is not entitled to relief on his claim of cumulative error.

VI. Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 1, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

erha1002.157

25